In re Dr. Rene F. RODRIGUEZ, Debtor.

John PEREIRA, As Trustee of the Estate of Dr. Rene F. Rodriguez, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 181–12566–260.
Adv. No. 183–0252.

United States Bankruptcy Court, E.D. New York.

June 20, 1985.

Charles R. Tropp, Staten Island, N.Y., for plaintiff-trustee.

Peter Sklarew, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for U.S.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

This is an adversary proceeding in which a trustee in bankruptcy seeks to set aside payments made to the United States Internal Revenue Service ("IRS") as preferential transfers.

### I

### FACTS

The debtor, Dr. Rene Rodriguez, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 12, 1981. On May 15, 1983, the trustee commenced this adversary proceeding against the IRS to recover three payments totaling $9,650.85 made to it within the 90 day period preceding the filing, as preferences pursuant to Section 547 [1] of the Bankruptcy Code.

---

1. Inasmuch as this case was commenced prior to October 8, 1984 when the Bankruptcy Amendments and Federal Judgeship Act of 1984 went into effect, it is governed by the Bankruptcy Reform Act of 1978. All references to and discussions of Bankruptcy Code Sections in this opinion are to the 1978 Code.

   Former § 547 provides in pertinent part:
   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of *property of the debtor*—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—

(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
(5) that enables such creditor to *receive more* than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title. (Emphasis added).

The payments were made in response to a notice of tax lien filed by the IRS in the Register's Office, Queens County, on May 8, 1981 on account of unpaid employee withholding taxes withheld by the debtor from employee wages for the five tax periods ending 12/31/79, 3/31/80, 6/30/80, 9/30/80 and 12/31/80 totalling $6,086.57 and his employees' federal unemployment taxes for 1978 and 1979 amounting to $778.94 for a total of $6,685.51 plus statutory additions.

On June 11, 1981 the IRS served a notice of levy on the debtor's two checking accounts at Banco de Ponce based upon the foregoing unpaid taxes. A check for $373.70 was issued by the bank on June 12, 1981 to the IRS. It is the first payment at issue and represents the balance in one of the debtor's two checking accounts at that bank. At the time of the levy the debtor's second account at Banco de Ponce showed an overdraft of $5,746.51.

On or about June 17, 1981 the IRS made an agreement with the debtor to release the levy on the bank accounts on condition that the debtor pay $7,391.87 to the IRS on or before June 30, 1981. Apparently, in anticipation of payment the levy was released on June 17, 1981. Shortly thereafter, on July 3, 1981 the bank debited the debtor's second checking account, for the sum of $7,391.87 and forwarded the bank's check for that amount to the IRS. The IRS receipt for the check was dated July 13, 1981. The front of the check stated "Re: Levy/IRS."

On August 6, 1981 the debtor made a third payment of $1,885.28 to the IRS by way of a check drawn on his account at the Pan American National Bank. The back of the check indicated that $1,616.47 of this payment was for withholding taxes for the quarter ending September 30, 1979, a period not included in the notice of lien filed May 8, 1981 or the levy. The check reflected that the remainder was for small balances still due on the tax periods which had been included in the tax lien of May 8, 1981. On August 12, 1981 the May 8, 1981 tax lien was released.

In his schedules, the debtor listed unsecured debts of $185,000 plus several unliquidated malpractice claims against him. Schedule A–1 indicates that over $19,000 of the unsecured debt constitutes priority taxes due and owing. He listed $7,000 due the State of New York based on warrants filed on September 12, 1980 and June 9, 1981. The State filed a priority tax claim for $4,690.68. He also listed $4,579.20 due the City of New York based on warrants filed on July 24, 1981. The City has not filed a claim to date. Also listed was $8,000 due the United States for income and withholding taxes.[2] He listed in his petition less than $3,500 in assets consisting solely of exempt property.

At the time the trustee commenced this preference action there was less than $7,000 in the estate based on the recovery of preferential payments. Since then the trustee has had disbursements of $1,694.39, leaving a present balance of approximately $5,300 in the estate. The trustee has pending two more preference cases, besides this one, with a possible ultimate recovery of another $7,000. In addition, the trustee has a fraudulent conveyance action pending against the debtor's wife for property valued at approximately $500,000.

In the present preference action the trustee moved for summary judgment. He as-

---

**2.** An earlier tax lien had been filed by the IRS on April 11, 1980 in the Queens County Register's Office for 1040 Income Taxes due for the year ending 1977. This lien was reduced to $1,352.11 plus interest at the time of the filing of the petition. None of the monies in question transferred by the debtor were applied to this obligation.

The IRS has filed a secured tax claim for $1,352.11 plus interest of $393.78 to the date of the petition based on that tax lien. It has also filed an unsecured priority claim under 11 U.S.C. § 507(a)(6) of approximately $6,700 for additional unsecured priority taxes.

serts that the facts indisputably establish all elements of a preference including the preferential effect enumerated in Section 547(b)(5), namely that the IRS received more than it would have if the payments had not been made and it received a payment according to the order of distribution set forth in the Bankruptcy Code for a Chapter 7 liquidation. He argues that the transfer of monies to the IRS violated the scheme of distribution contemplated by the Bankruptcy Code in a Chapter 7, thus, producing this preferential effect.

The IRS appearing by the United States Attorney opposes the trustee's motion maintaining that there are issues of fact, including the possible recovery of substantial property by the bankruptcy estate, which precludes the trustee from meeting his burden of proof on the Section 547(b)(5) "receive more" issue. The thrust of its argument is that property allegedly fraudulently conveyed to the debtor's wife, if recovered by the estate in a pending action, will so enlarge the bankruptcy estate as to permit not only a 100% distribution to it, but also to all creditors.

In addition, the IRS made a cross-motion for summary judgment in its favor. It contends that the greater portion of each of the three payments was for withholding taxes which are funds held in trust for the United States pursuant to Section 7501(a)[3] of the Internal Revenue Code. It argues that the trust fund monies were property of the government, not of the debtor, and therefore, not subject to a preference action. The trustee counters this by asserting that the failure of the debtor to collect and segregate the withholding taxes and the United States' consequent inability to trace a trust res, took the alleged trust fund payments out of 26 U.S.C. § 7501(a) and places them within the reach of 11 U.S.C. § 547.

**3.** 26 U.S.C. Section 7501(a) provides:
(a) General Rule—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

## II

### ISSUES

A. Were payments of withholding taxes by the debtor to the United States Internal Revenue Service within the 90 day period preceding the filing of his petition in bankruptcy property of the debtor subject to recovery by a preference action pursuant to § 547(b)?

B. Did payments made to the Internal Revenue Service within 90 days of bankruptcy provide the IRS with more than what it would have received if the transfers had not been made and it received payment in a Chapter 7 liquidation?

## III

### DISCUSSION AND CONCLUSIONS OF LAW

Summary judgment may be awarded in an adversary proceeding under Bankruptcy Rule 7056 which incorporates Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides that summary judgment will be granted when the moving party shows there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *American Mfg. Mut. Ins. Co. v. American Broadcasting Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir.1967), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). To sustain such a motion the movant has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). "[C]ross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely dis-

puted." 6 J. Moore, *Moore's Federal Practice* para. 56.13 at 56–341 (2d ed. 1983).

■ Initially, we will consider the government's cross-motion for summary judgment. We find that the government has met its burden regarding the monies paid to the IRS which represented withholding taxes due. They are trust funds within 26 U.S.C. § 7501(a) and thus not property of the debtor. For the reasons set forth below, we grant summary judgment in favor of the government as to those portions of the payments made that represented withholding taxes which are in the nature of trust funds.

■ To prevail in a preference action, the trustee must show that a "transfer of property of the debtor" took place.[4] The trustee here has not met this burden with regard to those monies paid to the IRS on account of withholding taxes.

Each of the three payments at issue in this proceeding involved taxes reported on Forms 941 which are filed quarterly by employers to report (1) employees' income taxes withheld from wages, (2) employees' FICA (social security) withheld from wages, and (3) the employer's contributions to employees' FICA. The first two categories are internal revenue taxes which the employer is "required to collect or withhold ... from any other person and pay over" to the United States under § 7501(a) of the Internal Revenue Code.[5] That section is a congressional recognition of the character of withheld taxes. *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

The legislative history accompanying § 547 of the Bankruptcy Code supports the position that a person having a duty to withhold taxes is holding the money in trust until it can be turned over to the United States. The House Report on § 547 states:

A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code Section 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority is in a separate class with respect to those taxes, if they have been properly held for payment, *as they will have been if the debtor is able to make the payments.* (Emphasis added).

H.R. No. 595, 95th Cong., 1st Sess. 373 (1977); *reprinted in* 1978 U.S.Code Cong., & Ad.News 5787, 5963, 6329.

Moreover, the legislative history accompanying Section 541(a) which delineates property of the bankruptcy estate, supports the IRS' contention that withholding taxes are trust funds and, accordingly, shielded from a preference attack. It states:

*[P]roperty of the estate does not include the beneficial interest in property held by the debtor as a trustee. Under the Internal Revenue Code of 1954 (Section 7501), the amounts of withheld taxes are held to be a special fund in trust for the United States.*

. . . .

*[A]mounts of withheld taxes are held by the debtor in a trust relationship and, consequently ... such amounts are not property of the estate.* (Emphasis added).

124 Cong.Rec. H11,114 (daily ed. Sept. 28, 1978); S17, 430–31 (daily ed. Oct. 6, 1978).

The trustee contends that the failure of the debtor to collect and segregate the withholding taxes and the United States' consequent inability to trace a trust res takes the withholding tax payments out of 26 U.S.C. Section 7501(a) and places them within the reach of a preference action. To buttress this argument, the trustee relies on *United States v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971). In *Randall*, because there was no specific fund from which withheld taxes were traceable, the Supreme Court decided the United States was not entitled to payment according to the priorities set forth in the Bankruptcy Act of 1898.

---

**4.** *See supra note 1.*

**5.** *See supra note 3.*

*Randall,* however, is clearly distinguishable from the present situation. In *Randall,* the government was seeking payment from the bankruptcy estate for monies which the debtor had neglected to pay and remained unpaid at the time of filing. However, in the present case, the monies were paid by the debtor prior to his filing of a petition in bankruptcy. The estate here is trying to recover these monies, labeling them preferences.

As noted above, the House Report on § 547(b) recognized that where the debtor was able to make the withholding tax payments as evidenced by his delivery of the funds to the IRS, the monies should be labeled trust funds and the debtor's duty as trustee regarded as completed.

In a recent case in point *In re Razorback Ready Mix Concrete Co.,* 45 B.R. 917, (Bkrtcy.E.D.Ark.1984), a Chapter 11 debtor-in-possession sought recovery of FICA payments made to the IRS during the 90 day preference period. After analyzing the relevant Sections of the Internal Revenue Code, the Bankruptcy Code and pertinent legislative history, the bankruptcy court held that even though the debtor failed to place employees' FICA withholding into a separate account, the fact that it designated such payments as taxes due and delivered them to the IRS was sufficient to create a trust fund on behalf of the government in accord with 26 U.S.C. 7501(a). The *Razorback* court explained:

> [Withholding] taxes are ordinarily never considered property of the employer having the duty to withhold. Initially, the tax monies are the property of the employees from whose wages the monies are withheld, and after the withholding is accomplished, 26 U.S.C. Section 7501(a) provides that the monies belong to the United States and are held in trust by the employer.

*Id.* at 920.

In *Razorback,* Bankruptcy Judge Robert F. Fussell specifically found that the funds paid to satisfy withholding taxes could not be traced to amounts withheld. He stated:

Between the time that the taxes in question were withheld from the wages of the Debtor's employees and the time that the payments were made to the Defendant, the general checking account of the Debtor [from which the payments were made] was reduced on occasions to near zero.

*Id.* at 919. "The actual monies withheld, then, were undoubtedly not part of the payments made. The debtor in fact borrowed additional funds prior to the payments." *Id.* at 921. The court nonetheless held that the withholding tax portions of the payments at issue were not "property of the debtor" within § 547(b). *See also, In re D'Aiuoto,* 48 B.R. 451, 3 Bankr.L. Rep. (CCH) para. 70,507 at 86,943 (Bkrtcy. N.D.N.Y.1985) (Pre-petition tax levy on funds which had been placed in escrow for the payment of taxes divested the debtor of any interest in the funds).

The debtor here also made payments to the IRS prior to filing for Bankruptcy. We hold those portions of the payments representing withholding taxes do not constitute transfers of property of the debtor, but rather payments of monies held in trust for the government under 26 U.S.C. 7501(a), so that no preference exists for these funds. This is true regardless of the priorities of the various claimants with respect to the monies had the transfers not been made. This is also true regardless of whether or not the United States' claim to the trust fund monies was secured. The United States is thus entitled to judgment as a matter of law with respect to those portions of the payments representing withholding taxes.

Having decided defendant's cross-motion for summary judgment in its favor under a trust fund theory, the court next addresses that portion of the payments at issue which do not represent trust funds. We will thus consider the trustee's original motion for summary judgment.

▆ To prevail in a preference action the trustee must prove all statutory elements

set forth in § 547(b)(1) through (5). *In re O.P.M. Leasing Services, Inc.*, 40 B.R. 380 (Bkrtcy.S.D.N.Y.), *aff'd* 44 B.R. 1023 (S.D. N.Y.1984). In the instant case the elements enumerated in subsections 547(b)(1) through (4) have not been controverted.[6]

■ The trustee argues that the payments made to the IRS violate the Code's order of distribution, therefore establishing a preference and entitling him to summary judgment as to those funds. The IRS maintains that the "receive more" element, (§ 547(b)(5)), has not been established, thus precluding summary judgment as to the non-trust fund monies. For the reasons below, we deny the trustee's motion for summary judgment as to the non-trust fund portion of the monies transferred.

The issue raised by Section 547(b)(5) is whether the transfer enabled the IRS to receive more than it would receive if—

   (A) the case were a case under Chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Thus, section 547(b)(5) requires a comparison of the payments received by the IRS with the distribution it would receive under Chapter 7 if the transfer had not been made.

Section 726 of the Bankruptcy Code sets forth a distribution scheme to be followed in a Chapter 7 liquidation. First, property is distributed among priority claimants in the order prescribed by § 507. Section 507(a) in turn specifies that all administrative expenses and claims must be paid first. Section 507(a)(6) provides that those taxes which qualify must be paid in the sixth order of priority.

Section 724(b)[7] governs the distribution of property subject to valid tax liens and must be read in conjunction with §§ 726 and 507. The effect of § 724(b) is to treat a tax lien as a claim between the fifth and sixth priority under § 507(a) rather than as a secured claim.[8] Preservation of this scheme has been recognized as integral to carrying out the Code's basic philosophy. *See In re R & T Roofing Structures & Commercial Framing, Inc.*, 42 B.R. 908, 914–15 (Bkrtcy.D.Nev.1984); *In re Community Hospital of Rockland County*, 15 B.R. 785, 787 (Bkrtcy.S.D.N.Y.1981). Thus, payment made in violation of this

---

**6.** *See supra note* 1.

**7.** 11 U.S.C. Section 724(b) provides:

   (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for taxes, or proceeds of such property, shall be distributed—

     (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

     (2) second, to claims specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), and 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

     (3) third, to the holder of such tax lien, to any extent that such holder's allowed claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

     (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

     (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

     (6) sixth, to the estate.

**8.** Collier succinctly explains the operation of the Code's subordination provision in relation to the preference section as follows:

Typically, the holder of a statutory lien that is not avoidable under section 545 will normally hold a secured claim so that payment in satisfaction of such a claim will not have a preferential effect under section 547(b)(5). However, where ... the lien is subordinated under section ... 724(b), ... the payment in satisfaction of the lien may create a preferential transfer. The preference will result when the elements of section 547(b)(1)–(4) are met and the holders of the lien receives [sic] more on account of the satisfaction of the lien than would have been received had the transfer not been made and the estate was liquidated under Chapter 7.

4 *Collier on Bankruptcy* Para. 547.42 at 547–131 (15th ed. 1984).

scheme can result in a creditor "receiving more" in accordance with § 547(b)(5).

■ Whether or not a transfer meets the statutory requirement of § 547(b)(5) requires construction of a hypothetical distribution of the bankruptcy estate. *See, e.g. Big Three Transportation, Inc.*, 41 B.R. 16, 20 (Bkrtcy.W.D.Ark.1983). The considerations involved in making this determination were recently summarized in *In re Independent Clearing House Co.*, 41 B.R. 985, 1013 (Bkrtcy.D.Utah 1984) as follows:

> Whether a creditor has received a preference is to be determined, not by what the situation would have been if the debtor's assets had been liquidated and distributed among its creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results. *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 451, 80 L.Ed. 655, 657 (1936). *See* 2 G. Glenn, FRAUDULENT CONVEYANCES AND PREFERENCES § 401, at 688 (rev. ed. 1940). To make this determination, the court must construct a hypothetical liquidation of the debtor's estate. *Matter of Hale*, 15 B.R. 565, 567, 8 B.C.D. 434, 5 C.B.C.2d 759 (Bkrtcy.S.D.Ohio 1981). The costs of the administration of the debtor's estate are to be taken into account in making the "receive more" determination. *In re Schindler*, 223 F.Supp. 512, 529 (E.D.Mo.1963). The court need only determine that the preferred creditor, if paid to the extent provided by the Bankruptcy Code, would receive less than 100 percent of its claim. Any dividend less than 100 percent insures that, unless the transfer is avoided, the creditor would receive more than it would receive if paid to the extent provided by the distributive provisions of Chapter 7. *In re Saco Local Development Corp.*, 30 B.R. 862, 865–66 (Bkrtcy. D.Me.1983). *See* 1983 Ann.Surv. Bankr.L. 662.

The trustee's interim report indicates there have been disbursements of $1,694.39 which constitute administration expenses under § 507(a)(1). These have not been paid. The debtor's schedules list no § 507(a)(2)–(5) debts. The only debts involved here are those for priority and secured taxes. From a practical point of view we note that the bulk of the assets of the estate consist of contingent recoveries dependent on the trustee litigation. From the proof submitted, it is not possible to construct a hypothetical distribution to creditors. The trustee has pending a fraudulent conveyance action, the outcome of which may provide for a 100% recovery by all creditors. Accordingly, we find there are material issues of fact regarding the preference determination and deny the trustee's motion for summary judgment as to the non-trust fund monies. Based on the situation at the time the petition in bankruptcy was filed and the fact that this bankruptcy case cannot be closed until the fraudulent conveyance suit is decided, we hold this preference action open insofar as the non-trust fund monies are concerned. Based on the factors above it is unnecessary to decide any other issues raised by the parties.

The parties are to submit an order in conformity with this opinion.

SO ORDERED.