**In re OLYMPIC FOUNDRY CO., a Washington corporation, Debtor.**

**Donald L. GINSBERG, Trustee, Plaintiff,**

**v.**

**The STATE OF WASHINGTON, Defendant.**

**Bankruptcy No. 83–03853.**
**Adv. No. A85–0222.**

United States Bankruptcy Court, W.D. Washington, at Seattle.

July 10, 1986.

James R. Tuttle, Atty. Gen. Office, Temple of Justice, Olympia, Wash., for State.

David A. Webber, Seattle, Wash., for trustee.

MEMORANDUM DECISION
AND ORDER

SIDNEY C. VOLINN, Bankruptcy Judge.

INTRODUCTION

The Trustee of the debtor corporation, Olympic Foundry Co. ("Debtor"), com-

menced this adversary proceeding to recover $37,283. transferred to the defendant, State of Washington ("State"), within 90 days of the filing of the bankruptcy petition. The State has moved for partial summary judgment, contending that $18,062. of the foregoing sum was collected by the Debtor from its customers to cover state retail sales taxes pursuant to RCW 82.08.-050 and therefore constituted trust funds not subject to recovery by the Trustee. The Trustee brings a cross-motion for summary judgment seeking to recover the entire amount plus interest as a voidable preference under 11 U.S.C. § 547.

## STATEMENT OF FACTS

The Debtor filed a Chapter 11 bankruptcy petition on December 15, 1983. Within 90 days prior to the filing, the State received the sum of $37,283.96 in payment of the following taxes owed to it by the Debtor: $18,062.23 for local retail sales taxes; $11,473.40 for business and occupation taxes; $1,534.34 for state and local use taxes; and $6,213.99 for accrued penalties. The case ultimately was converted to Chapter 7 and a Trustee appointed.

The Debtor was experiencing financial difficulties for a considerable time prior to the bankruptcy filing. Its primary lender, National Acceptance Corp. ("NAC"), had imposed strict controls over the Debtor's finances. For two years prior to the filing the debtor had been required to submit to NAC all of its receipts including sums collected for retail sales taxes. NAC, in turn, disbursed funds to the Debtor which were used to pay operating expenses. There is no dispute regarding the fact that the receipts, including retail sales taxes, were commingled in NAC's accounts beyond the possibility of tracing.

In November, 1983, NAC advanced $37,-283.96 to the Debtor. On or about December 8, 1983, one week before bankruptcy, the Debtor paid that amount to the state to cover the previously mentioned taxes which related to the taxes due for May and June of 1983. No trust account was ever maintained for tax purposes. The funds were advanced by NAC from the Debtor's operating line of credit and were not drawn from any discrete trust account nor did they later pass through any trust account of the Debtor before being paid to the State. The funds derived either from general bank accounts containing receipts from the Debtor and maintained by NAC for the Debtor, or from NAC's own accounts.

## CONTENTIONS

### A.

The State contends that the $18,062.23 which the Debtor collected from customers for retail sales taxes was subject to an express trust created by RCW 82.08.050. Section 547(b) permits the trustee to avoid certain pre-petition transfers by the debtor if the transfers involve property of the debtor. The State argues that trust funds in which it holds a beneficial interest are not property of the debtor so as to permit avoidance by the trustee.

As to the remaining $19,221.73, which the Debtor paid to cover other taxes and penalties, the State points to Section 547(b)(5) which requires a showing that a payment exceed the creditor's liquidation share in order for it to be avoidable as preference. The State contends there is a factual issue regarding whether or not the payment of these debts in full permitted the State to receive more than it would receive in the Chapter 7 distribution. The State does not controvert the Trustee's figures which, based on current information and reasonable expectations, demonstrate the probability of partial payment for tax claims. Instead, the State contends that it must first receive further responses to discovery requests heretofore answered by the trustee before this issue can be resolved.

Finally, the State contends that, if it must return any funds, it should not be required to pay interest.

### B.

The Trustee contends that the entire $37,283.96 payment is avoidable as a pref-

erence under Section 547. He has submitted affidavits and declarations to establish all elements of a preferential transfer and rejects the State's trust fund theory primarily on the grounds that the trust funds cannot be traced and no such "trust fund" ever existed. He also argues Congress in enacting that Section 507 intended that excise taxes should be in a priority payment category. Thus, he argues, Section 547 is applicable to tax payments because the conflict with the State law trust fund must be resolved pursuant to the federal Bankruptcy Code under the Supremacy Clause of the U.S. Constitution.

Finally, the Trustee contends that he should be paid interest on the sums returned at the state law statutory 12 percent interest rate from either December 8, 1983, the date of the payment, or the date on which the Trustee made demand for return of the funds.

## ISSUES

A. Does the trust fund status of retail sales taxes collected by the Debtor under RCW 82.08.050 remove them from operation of Section 547?

B. Are there any issues of fact or law regarding the trustee's Section 547 action to recover the payment of business and occupation taxes, state and local use taxes, and accrued tax penalties?

C. Is the Trustee entitled to recover interest on any funds recovered under Section 547?

## DISCUSSION

■ The payment of taxes and penalties to the State breaks down into two categories: (1) retail sales taxes which Washington State law requires a business to collect from customers and hold in trust for the State; and (2) business and occupation taxes, state and local use taxes, and accrued penalties as to which no trust fund status attached.

Section 547 permits the trustee to recover prepetition transfers of the debtor's property, made on or within 90 days prior to the filing of the bankruptcy petition, for an antecedent debt, at a time when the debtor was insolvent, and which enabled the creditor to receive more than it would receive in a Chapter 7 liquidation.

The Trustee has filed affidavits signed by the former Chief Financial Officer of the Debtor which establish the factual basis for the Trustee's position. The affidavits demonstrate that the transfer occurred on or about December 8, 1983, within 90 days of the December 15, 1983 filing date. At the time of the payment the Debtor was insolvent, having a negative net worth of approximately $1,200,000. The payment was for an antecedent debt since the taxes and penalties covered dated back to May and June of 1983. If the state taxes are paid at the 7th priority, their highest possible priority under Section 507(a)(7), they would not be paid in full and consequently the State received more through the prepetition payment than it would receive in the Chapter 7 liquidation.

### A.

As to the first category, retail sales taxes, the State raises the legal issue of whether or not the Debtor had a property interest in the transferred funds. It contends that the funds were impressed with a trust pursuant to RCW 82.08.050 which provides that the retail sales tax which the seller collects from customers

> shall be deemed to be held in trust by the seller until paid to the department, and any seller who appropriates or converts the tax collected to his own use or to any other use other than the payment of the tax to the extent that the money required to be collected is not available for payment on the due date as prescribed in this chapter shall be guilty of a gross misdemeanor.

The tax is due on the 15th day of the month following the tax period in which a taxable purchase was made. *Id.* The seller cannot rebate any portion of the sales tax to a purchaser except as permitted by the statute. RCW 82.08.120.

It is clear from the language of the statute that the funds collected for retail sales taxes are to be held in trust for the State which have the beneficial interest in them. In that respect they are similar to federal withholding taxes which employers must deduct from an employee's wages and hold for the federal government under 26 U.S.C. § 7501(a) whereby the amount deducted "shall be held to be a special fund in trust for the United States." *Id.* The language and purpose of RCW 82.08.050 is calculated to accomplish the same result as the language of the federal statute.

The issue here is whether the funds paid may be recovered as a preferential payment where they were not held in trust and commingled with other funds of the debtor or NAC and dissipated prior to the payment to the State. The legislative history attending Section 541 (property of the estate) is illuminating:

As to property held by the debtor as a trustee, the House amendment provides that property of the estate will include whatever interest the debtor held in the property at the commencement of the case. Thus, where the debtor held only legal title to the property and the beneficial interest in that property belongs to another, such as exists in the case of property held in trust, the property of the estate includes the legal title, but not the beneficial interest in the property. As to withheld taxes, the House amendment deletes the rule in the Senate bill as unnecessary since property of the estate does not include the beneficial interest in property held by the debtor as a trustee.... *Where the Internal Revenue Service can demonstrate that the amounts of taxes withheld are still in the possession of the debtor at the commencement of the case, then if a trust is created, those amounts are not property of the estate....*

Where it is not possible for the Internal Revenue Service to demonstrate that the amount of taxes withheld are still in the possession of the debtor at the commencement of the case, present law generally includes amounts of withheld taxes as property of the estate.... where the amounts of withheld taxes are commingled with other assets of the debtor.... courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other taxing authorities, can demonstrate that the amounts withheld are still in the possession of the debtor at the commencement of the case. (emph. supp.)

Congressional Record at 124 Cong.Rec. H 11,114 (Sept. 28, 1978); S 17,430–431 (Oct. 6, 1978).

The quoted language makes clear that the bankruptcy estate does not include tax funds held in trust by the debtor if they are identifiable. The reference to "reasonable assumptions" appears to apply to tracing of the actual funds withheld in trust. If the Internal Revenue Service cannot "demonstrate" that the amount of the taxes withheld are still in the possession of the debtor at the commencement of the case then there is no trust and the funds are property of the estate.

### B.

In this case the trustee seeks to bring back into the estate funds paid over to the State prior to commencement of the case. It is evident from the legislative history that taxing authorities are subject to the operation of Section 547. *Collier on Bankruptcy* states:

It is clear that the payment of taxes to a governmental unit is subject to avoidance as a preferential transfer, if the transfer meets the other criteria for a preference.

See *Collier Bankruptcy Manual*, 3rd Ed. 1985, ¶ 547.05(3), 547–18,19. "The other criteria for a preference" include the requirement of Section 547(b) that the transfer must be a transfer of an interest of the debtor in property. The House Report on Section 547 states:

A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code Section 7501(a), and thus will not be a preference because the beneficiary of the trust, the

taxing authority, is in a separate class with respect to those taxes, *if they have been properly held for payment,* as they will have been if the debtor is able to make the payments. (emph. supp.) H.R. No. 595, 95th Cong., 1st Sess. 373 (1977); *reprinted in* 1978 U.S.Code Cong., & Ad. News 5787, 5963, 6329. The foregoing language logically means that if the debtor kept the funds which were retained for taxes appropriately in trust, they would then be available for payment to the IRS; correlatively, if the funds were not "properly held," the debtor would not be "able to make the payments" with the trust funds.

The State has cited two cases which are strikingly similar to the present case except that the cited cases involve 26 U.S.C. 7501(a) rather than the State statute involved here.

The first case is *In re Razorback Ready Mix Concrete Co.,* 45 B.R. 917 (Bkrtcy.E.D. Ark.1984) which involved 26 U.S.C. § 7501(a) and a payment in the preference period of taxes which the debtor was charged to collect in trust. The payment in that case was from a source not traceable to the actual funds collected in trust and in fact some of the monies used came from a recent loan obtained by the debtor. The court held that the allocation of the funds in the form of payment of taxes which should have been provided for by trust funds in effect constituted the trust *res.* Because the payment was found to be, *per se,* a payment of money held in trust, Section 547 was deemed inapplicable.

*Razorback* was followed by *In re Rodriguez,* 50 B.R. 576 (Bkrtcy.E.D.N.Y. 1985), where the Section 7501 funds had been paid to the United States prior to filing and the trustee sought recovery for the estate as a preferential transfer. As in the present case, the funds from which the payment was made were not designated as trust funds because the actual funds collected for tax purposes were commingled with other funds beyond tracing. The court held that the simple act of payment to the taxing agency of a sum equivalent to the amount which the debtor was necessarily a transfer of trust funds, and not the property of the debtor, thereby deflecting the preference rules of Section 547. *Rodriguez* (as did *Razorback*) relied on the legislative history of Section 547 and deemed the act of payment to create or revive the trust *res.* Id. at 581.

## C.

The Trustee, for support, points to *United States v. Randall,* 401 U.S. 513, 91 S.Ct. 999, 28 L.Ed.2d 273 (1971) and *In re Rohar Assoc., Inc.,* 375 F.Supp. 637 (S.D.N.Y. 1974). Those cases held that the funds must be traceable to a specific trust source. Both cases involved funds which had not yet been paid to the taxing authority and it was the Government which sought to remove the money from the estate. In *Randall,* the Supreme Court held that the U.S. was not entitled to payment of untraceable trust funds, whereas in *Rohar* the tax claimants could get the fund because it was traceable. These cases were considered inapposite by *Rodriguez* and *Razorback* because they did not involve preference actions. The Supreme Court in *U.S. v. Whiting Pools,* 462 U.S. 198, footnote 10, 103 S.Ct. 2309, footnote 10, 76 L.Ed.2d 515 (1983), adverted to the issue before us, albeit obliquely, stating:

... Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition. See Section 541(b); HR Rep. No. 95–595, p. 368 (1977); S.Rep. No. 95–989, p. 82 (1978). Although it may well be that funds that the IRS can demonstrate were withheld for its benefit pursuant to 26 U.S.C. § 7501 ... (employee withholding taxes), are excludable from the estate ... the IRS did not attempt to trace the withheld taxes in this case ...

The foregoing language is *dicta* since the case involved property seized by the IRS, pursuant to a claim of tax lien, prior to the filing of a Chapter 11 petition. The court ruled that the IRS was subject to turnover of the seized assets under 11 U.S.C. § 542(a) as property of the estate. However, the language plainly states that

the pre-bankruptcy seizure would stand only as to traceable trust assets.

It is important to note that *Whiting* involved, as does the instant case, a pre-bankruptcy transfer of assets; but, essentially there should be no difference in the nature of property, whether trust or non-trust, on the basis of the date of bankruptcy. The basic question is the nature of the property on the date of transfer. This is the issue raised under Section 547(b).

With all due respect, the reasoning of *Razorback* and *Rodriguez* is based on the faulty premise that a nonexistent or dissipated trust can be created or reconstituted without the transfer into that trust of some other property. To say that the act of identifying or transferring nontrust funds for payment of taxes somehow creates or reconstitutes the trust is only a semantic exercise since the transfer of other property, assuming that it is property of the debtor, would itself be a preference.

The term "reasonable assumptions" used in the legislative history, *supra*, does not mean employment of fictions. It is one thing to analyze the debtor's assets in order to determine, on a rational basis, if the assets include trust funds; it is another matter to suspend reason and conclusively presume that the funds used for payment necessarily are endowed with trust character.

Examination of the Legislative History for Section 541 indicates that Congress had in mind *any* trust funds held by the debtor including taxes collected by the debtor in trust for any taxing agency. The reference to the federal I.R.S. is in the nature of an example of the prior general reference to "withheld taxes." Indeed, the legislative history goes on to state that "courts should permit the use of reasonable assumptions under which the Internal Revenue Service, *and other tax authorities*, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case." (Emphasis added.) The reference to Section 7501(a), withholding taxes, in Section 547's Legislative History is in the nature of

an illustration, not a definitive identification of types of trust funds not subject to avoidance as a preference. There is nothing in the language of the statute itself to suggest that such a distinction was intended.

If the thesis of *Razorback* is correct, the payment of dissipated or untraceable trust funds, of any kind, would never be subject to preference avoidance. Any pre-bankruptcy payment by the debtor, of claims supposed to have been provided for with trust funds, would be held to have been paid with trust funds without regard to the source of the payment. Nothing in Section 541 or Section 547 gives any warrant for so sweeping an exemption. The policy of Congress in terms of legislative history does not come close to painting with so broad a brush.

## THE ISSUE OF FACTUAL DISPUTE

The State contends that there is a disputed issue of fact. Its contention in this respect is not based on contradiction of the debtor's statement or a showing that the detailed figures and analysis provided by Richard Bee, the chief financial officer of the debtor in exhibit J to his declaration, are incorrect or subject to dispute. Instead, the State contends that interrogatories it had submitted were not completely answered and that given further discovery it might show there is a dispute. Such a contention does not constitute a declaration which evidences or indicates a dispute. The State has had ample time within which to counter the detailed and specific figures provided by the Trustee and to show that there is a likelihood or possibility of a genuine factual issue as to there being a shortfall in payment of its claim in the course of a bankruptcy. It has made no effort nor shown that it is unable to produce or that it has been prevented from discovering contradictory information.

It hardly needs citation to state that the moving party for summary judgment has the burden of establishing that there is no factual dispute as to the issue in question. The Trustee has submitted Mr. Bee's decla-

ration which sets forth all the elements of a preference in great detail (with certain modifications not relevant here) which, for the purposes of this motion has not been refuted by the State. The total estimated funds available will be a maximum of $576,000. Total administrative and priority claims are estimated to be $723,000. Thus, it is virtually certain that the State will not be paid in full when liquidation is completed. The State has had ample opportunity to contradict the foregoing figures and to show that there is a possibility of a genuine factual dispute as to there being a shortfall in payment of its claim. It has not done so.

## CONCLUSION

### A.

Taxes are indeed the life blood of government. Yet, the course of history demonstrates the aptitude and ingenuity of both the tax collector and the taxpayer in their respective pursuit of and disability or disinclination to pay taxes. In order to more effectively reach for the debtor's assets and to fend off other creditors who might be engaged in common pursuit, legislatures have attempted to give the government a head start by providing for tax liens, or, where due process or equitable considerations intervene, by priority.

In bankruptcy, which is an equitable area, priorities have been set by conceived public policy against a background of the principle of equality of distribution to creditors. Thus, the priority for taxes by virtue of Congressional mandate as set forth in 11 U.S.C. § 507(a) is now a seventh priority after (1) administrative expense, (2) involuntary petition gap claims under Section 502(f), (3) wage claims, (4) employee benefit claims, (5) grain, elevator, and fisherman claims, and (6) lay-away deposit claims.

It is no wonder, then, that taxing agencies find little satisfaction in priority status. They seek instead an intrinsic interest of some kind in the debtor's assets. While the ultimate fairness of these procedures might be subject to question as to a number of taxes, there is justice to the claim of intrinsic interest on the part of the government as to taxes which have been collected for it by the taxpayer. No better illustration of such a tax is the sales tax. These are truly trust funds. But if the taxpayer diverts them, they are as gone and dissipated as would be the *corpus* of any other trust so diverted.

Despite urging by the Internal Revenue Service for the right to claim an interest in estate assets in a number of cases, courts have consistently ruled that the priority claim for taxes is unsecured. Thus, it has been held that a tax claim depends for payment on availability of estate funds consistent with the claim's relative position in the hierarchy of claims; this is so even where the estate held withholding taxes. Thus, a government claim, in the course of a Chapter 11 administration, for withholding taxes has been held to be of a lower priority than that of expense of administration. See *Randall, supra, In the Matter of Shakesteers*, 546 F.2d 821 (1976), and *In re Tamasha Town and Country Club*, 483 F.2d 1377 (1973).

The teaching of *Randall, Whiting Pools, Shakesteers*, and *Tamasha* is that the courts should be reluctant to alter or amend the stated policy of Congress which defines the property interests and priorities of diverse interests represented by the debtor's body of creditors. If Congress had intended that payment of a tax claim involving trust funds would never be subject to a preference claim, it could have specifically so provided. However, it made no mention of this.

The possibility for any discussion involving this subject arises out of a committee report which set forth a hypothetical illustration involving the general provision as to trust funds. That illustration took for its subject withholding taxes which, if properly collected and paid by a taxpayer to a taxing agency, would not be subject, presumably, to a claim for preference since the taxpayer had paid to the taxing agency, not his own money, but that of the agency. The relationship of this illustration to Section 547(b)(2) and the problem before us is,

at best, tenuous and remote. It should not serve to alter or redefine the clear language of Sections 541 and 547.

As to the business and occupation taxes of $11,473.40, state and local use taxes of $1,534.34 and penalties, these are excise taxes which are not of trust character intrinsically. They are clearly preferential.

## B.

## INTEREST

 The Trustee asks that the Court award interest from either the date of payment or the date of demand by the Trustee for return of the preferential payment. Award of interest is appropriate in actions to set aside a preference. *In re Independent Clearing House*, 41 B.R. 985, 1015 (Bkrtcy.D.Utah 1984). Where, as here, the initial payment was legal but subsequently voidable, the appropriate date for the running of interest is the date of demand by the trustee. Until the trustee made demand, retention of the funds by the State was proper. *Id.* In this case demand was made by letter on March 5, 1985. Since that time the State has resisted paying primarily because of its reliance on the legal issue raised in the *Razorback* decision. This matter did not involve complex factual issues such as might make it equitable to deny award of prejudgment interest. Therefore, the Trustee is entitled to interest from the date of demand, March 5, 1985.

## ORDER

The subject payments by the debtor to the State for taxes were preferential payments. The Trustee's motion for summary judgment is granted. The State is hereby ordered to turn over to the Trustee the $18,062. payment for sales tax and the $19,221.73 in payments for other taxes together with interest on both sums at 12 percent per annum from March 5, 1985.

This is a final order disposing of this proceeding.