### In re MILLER'S AUTO SUPPLIES, INC. Debtor.

**Max SCHWARTZ, Trustee, Plaintiff,**

**v.**

**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE, Defendant.**

**Bankruptcy No. 84–02233K.**
**Adv. No. 86–0148S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 13, 1987.

David Fishbone, Philadelphia, Pa., for plaintiff/trustee.

Prince Atlee Thomas, Deputy Atty. Gen., Com. of Pa., Philadelphia, Pa., for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

■ The matter before the Court is an adversarial proceeding in which the Trustee for the Debtor, Miller's Auto Supplies, Inc., seeks to avoid certain payments made to the Commonwealth of Pennsylvania, Department of Revenue (hereinafter referred to as "the Commonwealth") by the Debtor as preferential transfers pursuant to 11 U.S.C. § 547. The precise issue we must decide is whether monies collected for retail sales taxes and employer withholding taxes by the Debtor pursuant to state statutes requiring same is the equivalent of a trust, where there is no evidence as to whether the monies had been segregated from the general funds of the Debtor. If a trust has been properly established, the funds are not property of the Debtor's estate and, thus, payment of these funds would not be subject to avoidance as preferential transfers.

■ We find that the Commonwealth failed to show that the monies paid to it had been segregated; and, since we hold such segregation or tracing of funds is necessary to demonstrate the establishment of a trust, we find that the payments in question are property of the estate and, as such, were the subject of, avoidable preferences pursuant to § 547.

We are presenting our Opinion in narrative form because the parties have submitted this matter for resolution on a designated record consisting of a Stipulation of Facts filed on April 28, 1987. Consequently, we need make no factual findings and we will make reference to only such stipulated facts as are necessary to explicate our decision. Pursuant to our Order of April 29, 1987, the parties were accorded the opportunity to file briefs, the Trustee on or before May 15, 1987, and the Commonwealth on or before June 5, 1987, and we considered these in making our decision.

The Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on July 10, 1984. The case was converted to a Chapter 7 case on March 26, 1985, at which time Max Schwartz was appointed Trustee for the Debtor.

On February 2, 1984, the President of the Debtor Corporation signed a "Deferred Payment Agreement" with the Commonwealth, agreeing to make monthly payments on account of past-due retail sales taxes and employer withholding taxes. Pursuant to this Agreement, the Commonwealth received three payments from the Debtor totalling $118,205.29, all of which were received after April 13, 1984. April 11, 1984, represents the ninetieth (90th) day prior to the filing of the Chapter 11 petition. In addition to the foregoing, the parties have stipulated to facts which would make out all of the requirements of § 547(b)[1] except that the parties disagree

---

1. 11 U.S.C. § 547(b) provides in pertinent part:
   (b) ... the trustee may avoid any transfer of an interest of the debtor in property—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; ...
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under Chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

as to whether the payments were property of the estate such that § 547 would be applicable to these transfers.

The Commonwealth contends that the payments received were trust funds established pursuant to state law which had been collected and held by the Debtor on behalf of the state. The pertinent statutory provisions upon which the Commonwealth relies are as follows:

72 P.S. § 7225 (Pennsylvania Sales Taxes)—

All taxes collected by any person from purchasers in accordance with this article and all taxes collected by any person from purchasers under color of this article which have not been properly refunded by such person to the purchaser shall constitute a trust fund for the Commonwealth and such trust shall be enforceable against such person, his representatives and any person (other than a purchaser to whom a refund has been made properly) receiving any part of such fund without consideration, or knowing that the taxpayer is committing a breath of trust; ....

72 P.S. § 7320 (Pennsylvania Personal Income Tax)—

Every employer required to deduct any withholding tax under this article is hereby made liable for such tax. For purposes of assessment and collection, any amount required to be withheld and paid over to the department and any additions to tax penalties and interest with respect thereto, shall be considered the tax of the employer. All taxes deducted and withheld from employees pursuant to this article or under color of this article shall constitute a trust fund for the Commonwealth and shall be enforceable against such employer, his representative or any other person receiving any part of such fund.

61 PA.CODE § 34.2(d) (applies to Pennsylvania Sales Taxes)

*Accounting for an handling tax collections.* All taxes collected by a vendor from purchasers ... shall constitute a trust fund for the Commonwealth. Since the vendor is a trustee with respect to the taxes he has collected, the keeping of records which clearly reflect his performance of his responsibilities is basic to this fiduciary relationship. The act, in recognition of this, requires that a vendor shall remit the amount of tax due or the amount actually collected, whichever is greater.

(1) *Physical segregation of tax where collections are not shown on sales memoranda or cash register tapes.*

The act provides that a vendor must adopt some method of segregating tax from sales receipts and record such in accordance with proper accounting and business practices ...

(i) If a vendor keeps full-time memoranda of sales showing the amount of tax due and the amount charged to the purchaser ..., he shall not be required to physically segregate his tax collection from sales receipts or create other records of tax collections of individual sales.

(ii) If a vendor uses a register which lists each tax collection on a tape retained by the vendor, or if he makes such a list or record manually and retains it for departmental audit, he shall not be required to physically segregate his tax collections.... The fact that tax collections are not physically segregated from sales receipts shall not be deemed a waiver of the Department's procedural rights to enforce the trust which exists with respect to tax collections.

The Commonwealth further asserts that since state law does not require the segregation of funds, 61 PA.CODE § 34(d)(1)(ii), to establish a trust, and since the Trustee adduced no facts to support its contention that payments were made from the ordinary accounts of the Debtor and were not trust funds, the Commonwealth should prevail.

The Trustee counters with the argument that a trust is not established without segregation of funds, and that it was the Commonwealth who failed to carry its burden with respect to the tracing of funds. Both parties cite to an earlier decision of this

Court, *In re American International Airways, Inc.,* 70 B.R. 102 (Bankr.E.D.Pa. 1987) (hereinafter referred to as "AIA"), in which we held that where a debtor *has* segregated funds and established a trust for the United States for the payment of federal excise and withholding taxes pursuant to 26 U.S.C. § 7512(b), payment of such funds to the United States is not an avoidable preferential transfer. However, we also thusly indicated therein that, where funds had not been segregated, an avoidable preference occurs:

> [T]o successfully make a claim to specific funds which would otherwise be distributed to all creditors, a creditor is obliged to make a strong showing of not only the creation of a trust, but also the tracing of the specific funds against which a trust is allegedly imposed in the possession of the debtor and/or a trustee. In this way, the imposition of special priorities and secret liens which are anathema to the principle of equal distribution in a bankruptcy proceeding will be kept to a minimum. *Id.* at 105.

■ We are now confronted with the very issue which was previewed in *AIA.* We hold that the burden is upon the creditor to trace the funds against which a trust is being asserted and, if it fails to do so, no claim to specific funds will be permitted.

The majority of the cases which have considered the issue of whether a trust fund has been established for the purpose of determining avoidable preferences in bankruptcy cases have arisen under 26 U.S.C. § 7501(a) and concerned federal taxes (hereinafter referred to as "§ 7501 trusts").[2]

■ The seminal case concerning enforcement of a § 7501 trust against a Debtor is *United States v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971).

*Randall* interpreted the Bankruptcy Act, which the Code was enacted to supersede in 1978. In *Randall,* the debtor-in-possession was ordered to maintain a separate bank account for payroll taxes pursuant to 26 U.S.C. § 7501(a). The debtor withheld taxes from the wages of its employees, but did not deposit the taxes in a segregated account as it was required to do. After the estate was liquidated, the Internal Revenue Service (hereinafter referred to as "IRS") argued that the withheld taxes were not property of the estate but rather were subject to a § 7501 trust. The Supreme Court held that enforcement of such a trust would defeat the express priorities of the Bankruptcy Act. 401 U.S. at 518. After an analysis of the Act, the Court concluded that the legislative development of bankruptcy laws "(1) marks a decline in the grant of a tax preference to the United States and (2) marks an ascending priority for costs and expenses of administration." *Id.* at 517, 91 S.Ct. at 994. The Court further stated that "the statutory policy of subordinating taxes to costs and expenses of administration would not be served by creating or enforcing trusts which eat up an estate, leaving little or nothing for creditors and court officers whose goods and services created the assets." *Id.* at 518, 91 S.Ct. at 995. We are bound by, and fully agree with, the Supreme Court's statements, adding that we view trusts generally as tantamount to giving preference to particular creditors in bankruptcy distribution, and thus we believe that their recognition should be sparingly legitimized. *See AIA, supra,* 70 B.R. at 103, 104.

Since we presented, at some length, in *AIA, supra,* 70 B.R. at 104–05, our analysis that Congress enacted 11 U.S.C. § 541(d) with the specific intent to overrule two cases which extended the reasoning of *Randall,*[3] we will not repeat ourselves

---

**2.** 26 U.S.C. § 7501(a) provides as follows:

Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and

subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

**3.** *In re Shakesteers Coffee Shops,* 546 F.2d 821 (9th Cir.1976), *cert. denied,* 413 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1071 (1977); and *In re Tamasha Town & Country Club,* 483 F.2d 1377 (9th

here, except to reaffirm our analysis therein. As we stated in *AIA,* "we are not prepared to hold that enactment of 11 U.S.C. § 541(d) overrules *Randall,* a case in which the debtor failed to segregate the funds which were to be held in trust under statutory provisions of the Internal Revenue Code ..." *Id* at 105. The facts of the case *sub judice* are consistent with the facts of *Randall,* and we find that the Commonwealth has failed to carry its burden in the tracing of the funds or demonstrating that segregation had occurred to such an extent as to establish a trust.

The reasoning of *Randall* has been followed in several Code cases, *In re Olympic Foundry Co.,* 63 B.R. 324 (Bankr.W.D. Wash.1986); *In re Mayor Dynamics, Inc.,* 59 B.R. 697 (Bankr.S.D.Calif.1986); and *In re Air Florida Systems, Inc.,* 50 B.R. 653, 659 (Bankr.S.D.Fla.1985), *aff'd sub nom. United States v. Air Florida, Inc.,* 56 B.R. 732, 735 (S.D.Fla.1985). *But see In re Rodriguez,* 50 B.R. 576 (Bankr.E.D.N.Y.1985); and *In re Razorback Ready-Mix Concrete Co.,* 45 B.R. 917 (Bankr.E.D.Ark.1984).[4] The *Olympic* case is precisely on point as it is the only case which addresses the trust fund issue as it relates to state law. The pertinent state statute provided that the retail sales tax which the seller collects from customers "shall be deemed to be held in trust by the seller until paid to the [state government]." *Id.* at 326. The issue in *Olympic,* just as it is in the case under consideration herein, was whether funds paid to the state within ninety days of the bankruptcy filing were property of the estate where they were not segregated as a trust and had been commingled with other funds so as to constitute an avoidable preferential transfer. The state statutory authority for the establishment of a trust did not require segregation in either *Olympic* or in the case *sub judice.* Consequent-

ly, the respective states argued there and here that segregation of funds or tracing is not necessary to establish a trust.

However, the following legislative history of § 541 respecting property of the estate is, to us, illuminating:

As to withheld taxes, the House amendment deletes the rule in the Senate bill as unnecessary since property of the estate does not include the beneficial interest in property held by the debtor as a trustee.... Where the Internal Revenue Service can demonstrate that the amounts of taxes withheld are still in the possession of the debtor at the commencement of the case, then if a trust is created, those amounts are not property of the estate....

Where it is not possible for the Internal Revenue Service to demonstrate that the amount of taxes withheld are still in the possession of the debtor at the commencement of the case, present law generally includes amounts of withheld taxes as property of the estate.... *where the amounts of withheld taxes are commingled with other assets of the debtor.... court should permit the use of reasonable assumptions under which the Internal Revenue Service, and other taxing authorities, can demonstrate that the amounts withheld are still in the possession of the debtor at the commencement of the case* (emphasis added). 124 CONG.REC. H 11,114 (daily ed. Sept. 28, 1978); S 17,430–31 (daily ed. Oct. 6, 1978).

We agree with the following analysis of the *Olympic* court:

[T]he quoted language makes clear that the bankruptcy estate does not include tax funds held in trust by the debtor if they are identifiable. The reference to "reasonable assumptions" appears to

---

Cir.1973), took the reasoning of *Randall* one step further. *Shakesteers* and *Tamasha* held that, even when the debtor *did* segregate funds for tax in a § 7501 trust, the IRS was not entitled to a preference over other creditors. *Shakesteers,* 546 F.2d at 824; *Tamasha,* 483 F.2d at 1380–81.

4. As we noted in *AIA, supra,* 70 B.R. at 105, the *Rodriguez* and *Razorback* decisions make it clear that these courts believe that *Randall,* as well as *Shakesteers* and *Tamasha,* have been overruled by 11 U.S.C. § 541(d). We disagree and decline to follow these cases, believing that the *Randall* decision still has vitality. *See also In re Design Store Corp.,* 67 B.R. 325, 327 (Bankr.D.Md.1986).

apply to tracing of the actual funds withheld in trust. If the [taxing authority] cannot "demonstrate" that the amount of the taxes withheld are still in the possession of the debtor at the commencement of the case then there is no trust and the funds are property of the estate. 63 B.R. at 327.

*Olympic* holds that the payments of taxes, including retail sales taxes, were avoidable as preferential transfers where the funds paid had not been segregated.

We also find support for our holding that segregation or the ability to trace funds asserted to be trust funds is necessary in dicta of the United States Supreme Court in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983):

> ... Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition. *See* § 541(b), HR Rep No. 95–595, p 368 (1977); S Rep No. 95–989, p 82 (1978). Although it may well be that funds that the IRS can demonstrate were withheld for its benefit pursuant to 26 USC § 7501 [26 USCS § 7501] (employee withholding taxes), are excludable from the estate, *see* 124 Cong Rec 32417 (1978) (remarks of Rep. Edwards) (Service may exclude funds it can trace), the IRS did not attempt to trace the withheld taxes in this case ...

This language plainly indicates that a pre-bankruptcy transfer would stand (or not be avoidable as a preference) only as to traceable funds. (paraphrasing *Olympic, supra,* 63 B.R. at 329).

*Major Dynamics, supra,* held that funds turned over to the Trustee at his appointment and monies generated by the Trustee were not subject to an impressed § 7501 trust when the withheld taxes had not been deposited in a segregated account. *Id.* at 701. Instead, the withheld taxes had been placed in the debtor's general operating account. The Court held that, consequently, any claim by the IRS was only entitled to the status of an administrative claim under 11 U.S.C. § 507(a)(1). *Id.*

In *Air Florida, supra,* the district court affirmed and agreed with the bankruptcy court's finding that the failure of the IRS to trace the commingled funds prevented the establishment of a trust, which resulted in a determination that avoidable referential transfers had occurred. 56 B.R. at 735 and 50 B.R. at 659 (citing to and following the reasoning of *Randall* ) (omitting citations).

Additionally, we find the analysis regarding 11 U.S.C. § 507(a)(6)[5] of both the district court and the bankruptcy court in *Air Florida* to be particularly persuasive. Section 507 designates the priorities of certain claims and expenses under the Code. Although the discussion in *Air Florida* pertains to excise taxes § 507(a)(6)(E) (currently designated as § 507(a)(7)(E), it is apparent that, generally, any prepetition tax claims would be accorded a sixth (now a seventh) priority. This is in keeping with

> the prime bankruptcy policy of equality of distribution among creditors, together with the additional purpose of § 547 of preventing courthouse races by creditors shortly before bankruptcy to economically and otherwise dismantle the debtor[. Thus,] it is more reasonably understood that the recovery of property preferentially transferred serves the best interest of all creditors and promotes a level of comfort that no creditor will receive a greater payment than others of his class. To this end, neither the Bankruptcy Code, nor any other legislation, permits the IRS to be treated any more favorably than any other creditor of the estate. 50 B.R. at 656.

*Accord, Olympic, supra,* 63 B.R. at 330. *See also, In re W.L. Bradley Co.,* 75 B.R. 505, 513 (Bankr.E.D.Pa. 1987).

Moreover, the legislative history of § 507 is fully supportive of our analysis. In discussing the priority accorded taxes, the Congressional Record provides, *inter alia* :

> Taxes which the debtor was required by law to withhold or collect from others

---

**5.** This section was redesignated as § 507(a)(7) in the 1984 Amendments to the Code.

and for which he is liable in any capacity, regardless of the age of the tax claims. This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes. 124 CONG.REC. 32415 (1978).

No special treatment of "trust fund" taxes is suggested.

█ In light of the fact that this matter was submitted for disposition upon a Stipulation of Facts, which makes no reference to the source of the funds paid to the Commonwealth, we find that the Commonwealth failed to meet its burden of tracing the funds or of proving that the alleged trust funds had been segregated from the general accounts of the Debtor. Consequently, we find that the Debtor made several avoidable preferential transfers to the Commonwealth totalling $118,205.29, and that, therefore, the Trustee is entitled to judgment in this amount.