H. M. GERSON, Receiver of the Estate of
Bell Lumber Company, Debtor,
Appellant,

v.

BOOTH LUMBER COMPANY, a corpo-
ration, Appellee.

No. 14333.

United States Court of Appeals
Ninth Circuit.

Sept. 13, 1955.

Rehearing Denied Nov. 7, 1955.

Robert H. Shutan, Beverly Hills, Cal.,
Bernard D. Flaxman, Los Angeles, Cal.,
Arnold M. Quittner, Beverly Hills, Cal.,
for appellant.

Paul F. Moore, Los Angeles, Cal., for
appellee.

Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.

JAMES ALGER FEE, Circuit Judge.

A petition for arrangement was filed October 23, 1952, by Bell Lumber Company, hereafter referred to as Bell. The cause was referred and a Receiver, who chose to continue the business on a limited scale, was named. After considerable difficulty in arriving at a satisfactory composition an Amended Third Modified Plan of Arrangement was filed with the Referee in Bankruptcy March 10, 1953, and with the United States District Court March 16, 1953. Concurrently with the filing Bell deposited $5,000 to insure its compliance with the Plan if it were accepted by the creditors.

The situation as to the two items in controversy here, at the date of filing this Plan, was as follows:

(1) Before the arrangement was filed Associated Molding Company, hereafter known as Associated, had a lien in the sum of $2,204.63 on certain lumber belonging to Bell for services performed thereon. In consideration of the release of the lumber Receiver agreed to pay for this lumber as soon as it was financially possible. He paid $500 on December 26, 1952. There was a balance of $1,704.63 still due to Associated for such lumber on March 10, 1953.

(2) On October 31, 1952, Bell had an asset, in the form of a reserve account, with Industrial Factors, for the sum of $2,162.80. It had previously been attached by another of Bell's creditors. On November 3, 1952, Receiver, in order to meet current operating expenses, borrowed $2,000 from Industrial Factors upon a Receiver's Certificate which constituted a first and preferred lien on all assets of Bell, the debtor. The reserve account balance of $2,162.80 was one of Bell's assets on March 10, 1953.

The Amended Third Plan of Arrangement provided in part:

"a. Administration Expenses

"The Debtor will pay the actual costs of administration of the Debtor estate as fixed by the Court, and the necessary amounts to be expended for filing and indemnity fees, and the respective attorneys for parties entitled to compensation out of this estate, as, if and when the same are allowed by the Court.

\* \* \* \* \*

"The Debtor will deposit the sum of $30,000.00 with such person as is designated by the Court, to be distributed as follows: Out of the said sum there shall be paid the Receiver's liability, the expenses of administration, labor claims, if any, the tax claims, including all current real estate and personal property taxes, and the balance thereof is to be distributed to creditors pro rata for the payment of claims filed or scheduled and allowed. \* \* \* All of the real and personal property of the Debtor wheresoever situated \* \* \*, be revested in the Debtor or transferred to any nominee of the Debtor \* \* \* free and clear of any and all liens and claims, except the first deed of trust against the said property."

On March 31, 1953, at ten o'clock a. m. pursuant to notice a meeting of the creditors of Bell was held and the Plan above noted was adopted. Bell at that time deposited in court a sum of $25,000 in accordance with this approved Plan. This amount coupled with the $5,000 originally deposited made up the sum which was to be deposited in accordance with the Plan. Booth Lumber Company, Inc., was the nominee of Bell to receive the property.

After these proceedings and sometime in April [1] Associated received a check for $1,500, drawn by Receiver on funds of Bell, and dated March 31, 1953.

After the Plan had been filed on March 10, 1953, the Receiver instructed Indus-

---

1. As to whether this check was drawn or delivered before the signing of the order of confirmation of the Plan, on April 1, 1953, the evidence does not make clear.

trial Factors to apply $2,000 of Bell's reserve account in payment of the Receiver's Certificate which Industrial Factors then held and which constituted a lien upon all the assets of Bell. This left an account balance of only $162.80.

The Referee, on April 1, 1953, confirmed the Plan of Arrangement which had been filed March 10 and adopted thereafter by the creditors. H. M. Gerson, who was Receiver, was appointed Disbursing Agent. This order of confirmation reads in part as follows:

"Ordered, that the petition for arrangement, as modified and amended by the third modification and amended, offered by the Debtor, be and the same is in all respects confirmed and approved, and title to all of the Debtor's property and assets wheresoever situated, including all real and personal property of the Debtor * * * be vested in Booth Lumber Company, Inc., * * * free and clear of any and all liens and claims, except the first deed of trust, and the Receiver is hereby ordered and directed to deliver immediate possession of said assets herein vested to Booth Lumber Company, Inc., a California corporation, and the Debtor shall be entitled henceforth to manage its respective affairs;

*    *    *    *    *    *

"That from the $30,000.00 deposited by the Debtor with the Disbursing Agent, the money is to be distributed as follows: Out of said sum there shall be paid the Receiver's liability, the expenses of administration, labor claims, if any, the tax claims, including all current real estate and personal property taxes and any other liens against the above-described property except the first deed of trust * * *."

Thereafter the Receiver filed his account and report, in which he alleged he had transferred all of Bell's property, real and personal, to Booth. Included therein also was a statement of the $1,500 payment to Associated. Among the assets listed was a balance of $162.80 due from Industrial Factors.

Booth filed objections to the two items. The Referee upheld the report and Booth filed a petition for review. The District Judge held that since the $30,000 was deposited for the purpose of paying these claims Receiver owed $1,500 and $2,000 therefrom to Booth. The Receiver then appealed to this court.

The Referee assumed to find that all assets of Bell were transferred to Booth, including the personal property free and clear of all liens and the real property "free and clear of all liens except the First Deed of Trust"; that the payment of $1,500 on March 31, 1953, to Associated was a necessary and reasonable expenditure and one which the Receiver was under a duty to make; and that the Receiver did not on March 31, 1953, transfer any funds or assets to Industrial Factors in satisfaction of the $2,000.00 Receiver's Certificate.

■ These are general conclusions of law. But even if they are viewed as findings of fact, as the Referee intended, they are clearly and demonstrably erroneous. It is objected that Booth had no standing to question the findings or the Receiver's report since it is not a creditor and the debtor is to be discharged. The courts cannot be under suspicion of countenancing arbitrary action of its officers amounting to a deprivation of property, the vesting of which had been proposed by the debtor, confirmed by the creditors and ratified and judicially affirmed by the Referee. The payment of $30,000 was the consideration of this contract. Booth had a right to see it got the property which Bell had paid for by the deposit.

■ It is correct to say that a plan of arrangement is not binding on the debtor or the creditors of the debtor until it has been confirmed by the order of the Referee. Likewise, it is unquestionable that title to debtor's property does not vest in the nominee until the plan of arrangement is formally confirmed. It may

be said that the pendency of a proposed plan of arrangement does not relieve the Receiver from his duty to pay the Receiver's obligations.

These propositions are true in the abstract and may be accepted. But they do not conflict with the result reached by the District Judge.

■■ A proposed plan of arrangement when confirmed by the court constitutes a solemn engagement binding upon all the parties, including the creditors, the debtor who has advanced money and the officers of the court. Such a plan speaks as of the time when it was placed on file as a proposal. The subsequent approval by vote of the creditors refers to conditions as of that same date. The order of the Referee confirming the Plan of Arrangement and placing it in effect crystallizes the conditions as of the date of the proposal and its submission.

Here the Plan itself designated those debts or accounts which the Receiver had a right to pay. If either of the payments here in question are of the types which the Receiver had the right to pay, such payments were entitled to priority and were to be made from the $30,000 fund as an expense of administration.

The Receiver's Certificate to Industrial Factors was given to secure money borrowed to pay expenses of administration. By the express terms of the Plan itself and the Referee's order the Receiver's expenses of administration were to be paid out of the deposited fund.

Associated had a lien upon the assets of Bell for $1,704.63. The Receiver eventually paid $204.63 out of the fund deposited by Bell to settle this debt. Industrial Factors had a lien on all of Bell's assets for $2,000. Since the property was to be transferred by the court free and clear of all liens to Booth, these of necessity had to be paid. But the Plan did not contemplate the payment thereof out of Bell's assets which were to be transferred to Booth. If that had been true, the property would have been transferred subject to these two liens. As

pointed out above, neither of these debts could be paid by the Receiver without reimbursement from the $30,000 deposit. Under the Referee's order of confirmation these items must have fallen into one of the categories; (1) "Receiver's liability," (2) "expenses of administration," or (3) "any other liens against the above-described property except the first deed of trust." They should, therefore, have been paid out of the fund deposited specifically for that purpose.

■ When the Receiver changed the situation by paying off the lien of Associated with $1,500 of Bell's funds, that officer depleted the cash assets by this amount. When, instead of paying the lien of $2,000 from the deposited fund of $30,000, as the Plan contemplated, the Receiver permitted Industrial Factors to retain assets of Bell which under the Plan he was required to transmit to Booth, he violated the contract he was supposed to carry out.

The trial judge ordered the Receiver to pay to Booth $1,500 and $2,000. This determination was exact and correct.

Affirmed.