In re MALMART MORTGAGE CO., INC., Debtor.

Harry GRAHAM, Trustee for Malmart Mortgage Co., Inc., Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 87–11681–CJK.
Adv. No. 88–1359–CJK.

United States Bankruptcy Court, D. Massachusetts.

Dec. 15, 1989.

Robert O. Resnick, Boston, Mass., for trustee.

Merrell Green, Wayne Budd, U.S. Atty. for the Dist. of Massachusetts, Boston, Mass., for United States.

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CAROL J. KENNER, Bankruptcy Judge.

The plaintiff brings this adversary proceeding pursuant to 11 U.S.C. § 547(b) to recover two withholding-tax payments, which the plaintiff alleges were preferential transfers, made by Malmart Mortgage Company, Inc. ("Malmart" or "the Debtor") to the Internal Revenue Service less than ninety days before Malmart filed its petition under Chapter 11 of the Bankruptcy Code. The United States answers with two defenses: the funds transferred were not property of the bankruptcy estate, and the United States' sovereign immunity bars this suit. The matter is now before the Court on the plaintiff's motion for summary judgment. The motion requires that the Court determine whether the transferred funds, which were derived from Malmart's general operating and payroll accounts, not from a segregated account containing only withheld federal income taxes, were "property of the debtor", as § 547(b) requires, in spite of 26 U.S.C. § 7501(a)'s dictate that "the amount of tax so withheld shall be held to be a special fund in trust for the United States." The Court concludes that the funds were property of the Debtor and that judgment should enter for the plaintiff as a matter of law.

*Statement of the Facts*

On a motion for summary judgment, "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). The evidence before the Court on this motion consists of the admissions in the defendant's answer to certain allegations in the plaintiff's complaint; the affidavits of Robbin D. Gargiulo, Robert Owen Resnick and Harry G. Graham, filed February 22, 1989; the Second Affidavit of Robbin Gargiulo, filed March 20, 1989[1]; the defendant's stipulations in its Proposed Pre–Trial Stipulation of Facts, filed March 30, 1989; and the Proofs of Claim filed by the Internal Revenue Service on behalf of the United States in the Malmart Mortgage Company bankruptcy case.

The evidence shows that the following facts are undisputed. Within ninety days before October 29, 1987, the date on which the Debtor filed its petition under Chapter 11 of the Bankruptcy Code, the Debtor made two $100,000.00 payments to the Internal Revenue Service ("I.R.S."). The first was made on September 15, 1987, by a check (# 3281) drawn on the Debtor's Payroll and Tax Account. The Second was made on October 14 or 15, 1985, by another check (# 3283) drawn on the same account. Both checks were duly honored. By agreement with the Debtor, the I.R.S. applied the payments primarily to the Debtor's withholding tax liabilities for the fourth quarter of 1985 and the first and second quarters of 1986. The remainder, $1,318.73, was applied to satisfy the Debtor's tax arrearages for 1985 under the Federal Unemployment Tax Act.

Malmart's Payroll and Tax Account was not established exclusively for tax payments to the I.R.S. Rather, it was used to pay wages for all Malmart's employees and to pay all local, state, and federal taxes. The specific funds that were used to make the two disputed payments to the I.R.S. were taken almost entirely from Malmart's Receipts Clearing Account. That is, at the start of business on September 15, 1987, Malmart's Payroll and Tax Account contained only $5,586.84. Later that day, Malmart transferred $100,000.00 from its Receipts Clearing Account to its Payroll and Tax Account, and then paid the first $100,000.00 to the I.R.S., thus returning the Payroll and Tax Account's balance to $5,586.84. Likewise, at the start of business on October 15, 1987, the Payroll and Tax Account contained only $7,138.63. Later that day, Malmart transferred $100,000.00 from its Receipts Clearing Account to the Payroll and Tax Account and then paid the second $100,000.00 to the I.R.S., thus returning the balance of the Payroll and Tax Account to $7,138.63.

The Receipts Clearing Account was an account in which Malmart deposited mortgage payments it received from mortgagors. It contained funds to be transferred to investor banks pursuant to Malmart's loan portfolios. It also contained deposits of profits realized by Malmart for the servicing of its mortgage portfolios.

The I.R.S., on behalf of the United States, has filed at least two Proofs of Claim in the Malmart bankruptcy case. The first, filed January 25, 1988, asserts an unsecured priority claim under 11 U.S.C. § 507(a)(7) for $693,510.52, most of which is for withholding taxes due from the second quarter of 1986 through the third quarter of 1987. The remainder ($3,209.62 in taxes due and $280.22 in interest) is a claim for federal unemployment taxes. The second Proof of Claim, filed February 21, 1989, after the case had been converted to a case under Chapter 7 of the Bankruptcy Code, asserts an unsecured priority claim under § 507(a)(7) for $643,862.19, but does not itemize the claim.

Plaintiff Harry Graham has himself submitted an affidavit that indicates that the

---

1. This affidavit is attached as Exhibit A to "Plaintiff's Response to United States Opposition to Plaintiff's Motion for Summary Judgment."

bankruptcy estate's bank account contains approximately $650,000.00, but that the administrative claims that have been filed against the estate total approximately two million dollars.

*Sovereign Immunity*

 The United States asserts that the Court lacks jurisdiction over this adversary proceeding because the United States has not waived its sovereign immunity. The Trustee contends that 11 U.S.C. § 106(c) itself constitutes a waiver of sovereign immunity with respect to preference actions brought under § 547; and in the alternative, he contends that pursuant to 11 U.S.C. § 106(a), the United States has waived its immunity to suit by filing a proof of claim against the estate. The Court agrees with the latter argument and so need not rule on the former.

Subsection 106(a) provides:

A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

This subsection is a waiver of the United States' sovereign immunity with respect to certain claims against the United States. It applies when three requirements are satisfied: (1) the claim against the United States must be property of the estate; (2) the United States must have filed a claim against the estate; and (3) the claim against the United States must arise out of the same transaction or occurrence out of which the United States' claim arises.

Each of these requirements is satisfied here. First, the preference claim the Trustee is bringing against the United States belongs to the estate and is being brought for the estate's benefit. Second, the United States has filed a claim against the estate. And third, the Trustee's and the United States' claims arise from the same transaction or occurrence: both arise from Malmart's failure to make timely payments of withheld income taxes, withheld F.I.C.A. taxes, and unemployment taxes. The United States seeks payment of the remaining tax arrearages. The Trustee seeks to recoup payments already made on account of those arrearages, claiming that they enabled the United States to receive more than it would have received in a distribution under Chapter 7 of the Bankruptcy Code if the payments had not been made. See 11 U.S.C. § 547(b)(5). The United States' and Trustee's claims thus "arose out of the same transaction or occurrence." See *WJM, Inc. v. Massachusetts Department of Public Welfare*, 840 F.2d 996, 1005 (1st Cir.1988) (which defines "transaction" as it is used in 11 U.S.C. § 106(a) as including a series or course of interrelated dealings). Therefore, by filing its proofs of claim, the United States is deemed to have waived its sovereign immunity with respect to the Trustee's preference claim.

*Preferential Transfer*

The Trustee seeks to avoid the payments to the I.R.S. by invoking his power under 11 U.S.C. § 547(b), which states (in relevant part):

[T]he trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ... and

(5) that enables such creditor to receive more then such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The parties have no dispute regarding parts (1) through (4) of this subsection. The uncontradicted evidence shows that the United States was a

creditor of Malmart, that the payments were made to and for the benefit of the United States, that they were made on an antecedent debt, and that they were made within ninety days before the filing of the petition. The United States does not concede that the transfers were made while the Debtor was insolvent, but neither has it submitted evidence tending to prove otherwise. Therefore, pursuant to the presumption created by 11 U.S.C. § 547(f),[2] the Debtor is deemed to have been insolvent when these transfers were made. The United States puts the plaintiff to his proof as to his allegations under § 547(b)(5), but has submitted no evidence on the issue. The plaintiff's uncontradicted evidence shows that the estate has insufficient assets to satisfy its administrative expense obligations, which must be paid in full before the Trustee can begin to pay tax claims under 11 U.S.C. § 507(a). See 11 U.S.C. §§ 726 and 507(a)(1) and (7). Therefore, there is no genuine issue of material fact on this issue: the $200,000.00 paid to the United States enabled it to receive more than it would have received in a distribution under Chapter 7 had the payments not been made. In sum, the plaintiff is entitled to judgment as a matter of law on subparts (1) through (5) of § 547(b).

The only remaining issue is whether the funds transferred to the United States belonged to the estate such that the transfer was "of an interest of the debtor in property," as § 547(b) requires. The issue arises because of confusion about the effect of the first sentence of § 7501(a) of the Internal Revenue Code, which states:

> Whenever any person is required to collect or withhold any internal revenue tax

from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States.

26 U.S.C. § 7501(a). The United States contends that on the basis of this section, the funds transferred to the United States should be deemed funds that the Debtor held in trust for the United States, not funds in which the Debtor had an equitable interest and therefore, according to 11 U.S.C. § 541, not property of the estate.[3] The Trustee argues that the transferred funds should not be deemed trust funds because they can not be traced to taxes actually withheld; the transferred funds were taken from a general revenue account, not from an account in which the Debtor segregated federal income and F.I.C.A. taxes withheld from its employees' salaries. The dispute between the parties is one of both fact and law. They disagree about the degree to which, as a matter of fact, the transferred funds can be traced; and they disagree about the degree to which, as a matter of law, the funds need to be traced in order for them to be deemed trust funds.

Regarding the factual part of this dispute, the Court finds no genuine issue of material fact: the uncontradicted evidence shows that the funds belonged to the Debtor and gives no indication that the funds paid to the United States can be traced or identified as segregated withholding taxes. Neither the Payroll and Tax Account nor the Receipts Clearing Account was intended to be or was used as an account in which to segregate taxes withheld for the benefit

---

**2.** Section 547(f) states: "For purposes of this section, the debtor is presumed to have been insolvent on and during the ninety days immediately preceding the date of the filing of the petition."

**3.** According to § 541(a) and (b), the bankruptcy estate is comprised of the debtor's legal and equitable interests in property as of the commencement of the case. However, as to property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, the property belongs to the estate "only to the extent of the debtor's legal title to such property, but not to the extent of

any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

Section 541 is not relevant to a preference action under § 547(b): the former defines property of the *estate*, while the latter is concerned only with whether the transferred property belonged to the *debtor*. The two should not be confused. Nonetheless, this Court accepts the principle that if the debtor did not own the beneficial or equitable interest in the transferred funds, then the funds were not "an interest of the debtor in property" for purposes of § 547(b).

of the United States. The Debtor established and used the Payroll and Tax Account for several purposes other than to pay its federal withholding tax obligations, including to pay salaries and state and local taxes. The Payroll and Tax Account was funded primarily out of the Receipts Clearing Account, which itself was funded with payments the Debtor received from mortgagors. I have no evidence that the amounts contained in either account consisted wholly or even partially of federal income and F.I.C.A. taxes actually withheld from employees' salaries. Nor have I any evidence that the Debtor actually withheld, collected, or set-aside income and F.I.C.A. taxes from its employees' salaries in the first place. I conclude that the funds paid to the United States were not funds that the Debtor segregated, withheld, or placed in trust for the United States.[4]

This factual conclusion requires that the Court address the United States' legal argument: that the very act of paying untraceable funds to the United States in itself identified those funds as, or converted them into, funds held in trust under 26 U.S.C. § 7501(a), such that they were not "an interest of the debtor in property" as that phrase is used in 11 U.S.C. § 547(b). The argument requires consideration of historical developments on this issue.

The Supreme Court twice addressed the enforceability of § 7501(a) trusts against unsegregated or untraceable assets. The first case, *United States v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971), arose under the former Bankruptcy Act. In that case, the debtor-in-possession, after initiating an arrangement under Chapter XI of the Act, withheld taxes from its employees' wages but failed to deposit the withheld taxes in a segregated account or to pay them to the United States. The United States later asked the Bankruptcy Court to give the withheld taxes priority over the payment of the costs and expenses of bankruptcy. It argued that pursuant to 26 U.S.C. § 7501(a), the withheld taxes are a trust in favor of the United States; and

the debtor's misconduct—its failure to segregate the taxes—should not be permitted to defeat the trust. The Supreme Court ruled against the United States, stating that the Bankruptcy Act's policy of subordinating taxes to costs and expenses of administration "would not be served by creating or enforcing trusts which eat up an estate." *Id.* at 517, 91 S.Ct. at 994.

*Randall* has been interpreted to preclude the enforcement of a § 7501(a) trust when the allegedly withheld funds have been commingled such that they cannot be traced. *Matter of Kennedy & Cohen, Inc.*, 612 F.2d 963 (5th Cir.1980); *Lusk Corporation v. Arizona State Tax Commission*, 462 F.2d 187 (9th Cir.1972). But *Randall* itself does not clearly set forth its own rationale, so its bearing on the present case is unclear. At least one court has reasoned that the *Randall* holding was based "on the effect of the trust claimed, and not on its alleged source." *In re Tamasha Town and Country Club*, 483 F.2d 1377, 1379 (9th Cir.1973). That is, *Randall* was based on the disruptive effect of the § 7501 trust on the former Bankruptcy Act's priority scheme, not on the fact that the allegedly withheld funds could not be traced. Accordingly, the Ninth Circuit held in *Tamasha* that *Randall* prohibited the enforcement of a § 7501(a) trust even against postpetition withheld taxes that the Debtor *did* segregate. And in another case, the Ninth Circuit deemed still another factor to be crucial to the holding in *Randall:* that the United States sought to impress its § 7501(a) trust not on taxes withheld before the bankruptcy filing, but on taxes withheld subsequent to the filing of the petition. *In re Shakesteers Coffee Shops*, 546 F.2d 821, 824 (9th Cir.1976), citing *Matter of Rohar Associates*, 375 F.Supp. 637 (S.D.N.Y.1974). Therefore, the *Shakesteers* court ruled against the United States because that case too involved taxes withheld postpetition. Nonetheless, the court recognized that had the debtor withheld and segregated the taxes prepetition, a val-

---

**4.** The Trustee bears the burden of proving that the transferred funds belonged to the debtor, 11

U.S.C. § 547(g), and has sustained that burden.

**6**

id and superseding trust fund in favor of the United States would have been created. *Shakesteers*, 546 F.2d at 824 & n. 5. See also *Begier v. United States*, 878 F.2d 762, 766, 771 (3rd Cir.1989) ("We believe it is significant that *Randall* addressed whether the I.R.S. could collect withholding taxes held postpetition," *id.* at 766).

*Randall* thus has three plausible rationales: that the taxes could not be traced; that the enforcement of a § 7501(a) trust would violate the priority rules under the former Bankruptcy Act; and that the taxes had been withheld after the bankruptcy filing. This case differs from *Randall* in several respects. It involves taxes withheld prepetition, not postpetition; it arises under the new Bankruptcy Code, not the former Bankruptcy Act; and the issue is whether the funds belonged to the debtor, not whether they belonged to the estate. Because of these factual differences, the applicability of *Randall* to this case is problematic.

A subsequent decision by the Supreme Court helps resolve this issue. See *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), at 254–256, 98 S.Ct. at 1788–1789. In *Slodov*, the relevant facts occurred entirely before the filing of a bankruptcy petition. The case concerned three corporations that became indebted to the United States for withholding taxes and that dissipated the withheld taxes before January 31, 1969, the date on which they became due and on which poor Slodov purchased the stock and assumed the management of the corporations. After Slodov assumed control, the corporations acquired funds ("after-acquired cash") sufficient to pay the tax arrearages, but used the funds for other purposes. Then in July, 1969, both Slodov and the corporations filed for bankruptcy. The *Slodov* case arose in the context of Slodov's own bankruptcy proceeding (not the corporations') when the United States alleged that Slodov himself was liable to the United States under 26 U.S.C. § 6672[5] for the

unpaid taxes withheld from wages prior to his assumption of control. One issue that arose was whether the untraceable after-acquired cash constituted trust funds under § 7501.

The Court held that § 7501 cannot be construed to impose a trust on funds that cannot be traced. The Court explained:

We further reject the argument that § 7501 ... can be construed as establishing a fiduciary obligation to pay over after-acquired cash unrelated to the withholding taxes. The language of § 7501 limits the trust to "the amount of the taxes *withheld* or *collected*." (Emphasis added.) Comparing that language with [26 U.S.C.] § 6672, which imposes liability for willful failure to collect as well as failure to pay over, makes clear that under § 7501 there must be a nexus between the funds collected and the trust created. That construction is consistent with the accepted principle of trust law requiring tracing of misappropriated funds into the trustee's estate in order for an impressed trust to arise. See D. Dobbs, Handbook on the Law of Remedies 424–425 (1973).

*Slodov v. United States*, 436 U.S. at 255–256, 98 S.Ct. at 1789. The court thus held that the trust created by § 7501 operates according to the rules of trust law. Accordingly, the trust must have a specific res—the funds actually withheld or collected—and applies only to those funds. If the employer does not actually withhold or collect taxes, the trust fails for lack of a res, even if the employer has after-acquired cash that could be used to satisfy its withholding tax obligations. If the employer does actually withhold taxes but misappropriates the withheld funds, the United States can impress a trust on the misappropriated funds only to the extent that they can be traced and identified as the actual funds withheld. Therefore, according to *Slodov*, § 7501 permits the United States to claim the beneficial interest in certain

---

5. Section 6672 imposes a penalty equal to the amount of the delinquent taxes on the officers or employees of the employer who, as officers or employees, were responsible for collecting

and paying trust funds taxes and willfully failed to do so. See *Slodov*, 436 U.S. at 244–245, 98 S.Ct. at 1783–1784.

funds only when those funds can be traced and identified as taxes actually collected and withheld.

The Court in *Slodov* made a further point: "a construction of § 7501 ... as imposing a trust on all after-acquired corporate funds without regard to the interest of others in those funds would conflict with the priority rules applicable to the collection of back taxes." *Id.* at 256, 98 S.Ct. at 1789; see also at 256–259, 98 S.Ct. at 1789–1791. The Court emphasized that if § 7501 were construed to authorize the imposition of a trust on untraceable funds, the trust thus authorized would be a very strange creature. It would resemble a tax lien in that it would create a property interest, but the trust would not be bound by the notice requirements and priority rules that govern tax liens. The trust would become a secret, floating lien. The concept of such a device is not only inconsistent with trust law, as was explained in the preceding paragraph. It also contravenes the non-bankruptcy priority rules that govern the collection of back taxes. For these reasons, the Supreme Court concluded that § 7501 does not impress a trust on untraceable funds.

*Slodov* thus supplies the answer to the present issue: whether, in the absence of evidence that funds the Debtor paid to the United States prepetition can be traced as withheld taxes, the funds should be deemed to have been held in trust for the benefit of the United States. *Slodov* leads to the conclusion that they should not. Rather, they should be deemed "an interest of the debtor in property" within the meaning of § 547(b). The majority of courts that have addressed this issue have held accordingly.[6]

A significant minority, relying on the legislative history of sections 541 and 547 of the current Bankruptcy Code, has reached the opposite conclusion: funds paid to the United States prepetition on account of withholding tax obligations are *per se* deemed to be trust funds and are not preferential transfers. See *Begier v. United States*, 878 F.2d 762 (3rd Cir.1989); *In re Rodriguez*, 50 B.R. 576 (Bankr.E.D.N.Y. 1985); and *In re Razorback Ready–Mix Concrete Co.*, 45 B.R. 917 (Bankr.E.D.Ark. 1984). The minority's conclusion is based primarily on one sentence in the House Report on the bill that became the Bankruptcy Reform Act of 1978, which enacted the current Bankruptcy Code.[7] With re-

---

6. See *Drabkin v. District of Columbia*, 824 F.2d 1102 (D.C.Cir.1987) (requiring tracing, but with the aid of "reasonable assumptions"); *In re Harvard Manufacturing Corp.*, 20 C.B.C.2d 1355, 1361, 97 B.R. 879 (Bankr.N.D.Ohio 1989) ("Prepetition payment of tax obligations within the preference period do not create or revive a statutory trust where such payments were never made from a duly established trust fund account." *Id.* at 1361, 97 B.R. 879.); *In re Rimmer Corp.*, 80 B.R. 337, 338–339 (Bankr.E.D.Pa.1987) (Funds paid to taxing authority during preference period will be deemed trust funds only where taxing authority can trace them as funds actually segregated for the purpose of paying the taxes in issue.); *In re Miller's Auto Supplies*, 75 B.R. 676 (Bankr.E.D.Pa.1987); and *In re Air Florida Systems, Inc.*, 50 B.R. 653, 658–659 (Bankr.S.D.Fla.1985).

See also *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983), where the Supreme Court suggested in *dicta* that tracing would be required in order for the I.R.S. to show that funds withheld for its benefit under 26 U.S.C. § 7501 were not subject to avoidance as a preferential transfer under 11 U.S.C. § 547.

See also *In re Olympic Foundry Co.*, 63 B.R. 324, 326–329 (Bankr.W.D.Wash.1986) (requiring

tracing), but *reversed without opinion*, 71 B.R. 216 (BAP 9th Cir.1987); *In re American International Airways, Inc.*, 70 B.R. 102, 105 (Bankr.E. D.Pa.1987) (United States can make a claim to specific funds that would otherwise be distributed to all creditors only if trust was created and funds can be traced.); *American International Airways, Inc.* ("AIA II"), 83 B.R. 324 (Bankr.E.D. Pa.1988); *In re E & S Comfort, Inc.*, 92 B.R. 616 (Bankr.E.D.Pa.1988) (requiring tracing, but with the aid of "reasonable assumptions").

7. In *Begier v. United States*, 878 F.2d 762, the conclusion also rests in part on a misapprehension of the facts in *Slodov*. The *Begier* court assumed that in *Slodov*, the United States had "argued that the Internal Revenue Code imposed a trust on funds acquired *post-petition*." *Id.* at 766 (emphasis added). Slodov itself makes clear that was not the case. See *Slodov*, 436 U.S. at 241–242, 98 S.Ct. at 1782 (setting forth the facts of the case) and at 251, 98 S.Ct. at 1787 (setting forth the argument that raised the trust fund issue). This misunderstanding at least partially undercuts the holding in *Begier*, especially where the *Begier* court deemed it "significant that both *Randall* and *Slodov* addressed whether the I.R.S. could collect withholding taxes held postpetition." *Begier*, 878 F.2d at 766. *Slodov* involved only taxes withheld prepetition.

spect to § 547 of the Code, the Report stated:

A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code section 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, if they have been properly held for payment, as they will have been if the debtor is able to make the payments.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), *reprinted in* 1978 U.S.Code Cong. & Adm.News 5787, 6329. The *Begier, Razorback,* and *Rodriguez* courts construed this passage to mean that, "if the debtor is able to make the payment, the taxes will have been 'properly held for payment,' which places the trust beneficiary in a class separate from other creditors and thus removes this payment from the category of preferences avoidable by the trustee." *Begier,* 878 F.2d at 768; see also *Razorback,* 45 B.R. at 922, and *Rodriguez,* 50 B.R. at 581. More importantly, these courts assumed without critical consideration that this passage from the legislative history should have the force of law.

This court concludes that the quoted sentence should not have the force of law, not only because the sentence is more ambiguous than the minority concedes regarding the meaning of "properly held for payment," but because to rely upon the House Report here would be to violate fundamental rules governing the courts' use of legislative history and intent to create exceptions to clear statutes. Specifically, no court should look behind an unambiguous statute for a contrary intent because, by using the contrary intent as a guide, a court would be favoring the unenacted history over the statute itself. Therefore, the plainer the language of the statute, the more convincing the contrary legislative history must be to overcome it. *Peare v. McFarland,* 577 F.Supp. 791, 794 (D.Ind. 1984), aff'd, 778 F.2d 354 (7th Cir.1985). "Exceptions to clearly delineated statutes will be implied only where essential to prevent 'absurd results' or consequences obviously at variance with the policy of the

enactment as a whole." *United States v. Rutherford,* 442 U.S. 544, 552, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979). "Only when a literal construction of a statute yields results so manifestly unreasonable that they could not fairly be attributable to congressional design will an exception to statutory language be judicially implied." *Id.*

Section 547(b) is clear and categorical. It permits a trustee to avoid "*any* transfer of an interest of the debtor in property," 11 U.S.C. § 547(b) (emphasis added), provided of course that the transfer satisfies the other requirements of § 547(b) and does not fall within one of the § 547(c) exceptions. It makes no exception for transfers on account of withholding taxes or even for transfers to trust fund creditors in general. Moreover, § 547 does not on its face define property rights; rather, it leaves the phrase "an interest of the debtor in property" undefined and leaves for non-bankruptcy law the issue of whether the transferred property interest belonged to the debtor. In view of the clarity of § 547(b), the legislative intent must be at least as clear and well documented to give rise to an implied exception.

The crucial sentence (See above, pages 7 and 8.) from the House Report, however, is ambiguous: it fails to make clear what it means by "properly held for payment." The minority's interpretation of that sentence—that as long as the debtor was able to make the payment with any funds, the funds used should be deemed to have been trust fund taxes properly held for payment—is a plausible interpretation but not the only plausible interpretation. One obvious problem with the minority's interpretation is that it reduces the concept of "properly held for payment" to a legal fiction. In other words, it does away with the requirement that the trust fund taxes be "properly held," that is, segregated or traceable. And if that is the case, it makes little sense for the House Reports to speak of the concept "properly held for payment" at all. On the other hand, the use of that concept would make sense if, by the first phrase of the sentence, the Report meant "a payment of the funds actually with-

held." According to this interpretation, when the House Report speaks of "taxes ... properly held for payment," it would be referring to the specific funds the debtor withheld.[8] This interpretation is plausible enough to dissuade the Court from relying on the cited sentence from the House Report to create an exception to § 547(b).

Nonetheless, even if the sentence clearly and unambiguously meant what the minority interprets it to mean, the Court would still have only that single sentence from the House Report as evidence of the legislature's intent. The Court has no way of knowing whether that one sentence from the House Report reflects the true intent of a majority of the members of the House, much less of the Senate. That the bill that was finally enacted does not reflect the content of the cited sentence suggests that the sentence does not reflect the legislature's actual intent. This conclusion is further supported by the fact that the sentence is at odds with one of the principal purposes of the Bankruptcy Code: the promotion of equal treatment among creditors. The preference section (§ 547) of the Code furthers that purpose by allowing the Trustee to avoid prepetition transfers that favor one creditor at the expense of others with equal or higher priority in the Chapter 7 distribution scheme. See 11 U.S.C. §§ 726 and 507. By inferring the existence of an exception to § 547 for transfers of untraceable funds in payment of trust fund tax obligations, the minority weakens § 547 and acts at cross-purposes with the Code and with the legislature that enacted it.

The minority's implied exception is not necessary to avoid absurd results. It may seem absurd or inequitable to force a creditor who has received payment for a legitimate debt to disgorge that payment, but that is the case with every preference avoided under § 547; and the inequity disappears when one remembers that the disgorgement benefits other legitimate creditors. It may also seem inequitable to permit the Debtor's failure to segregate withheld taxes to defeat the United States'

claim to a beneficial interest in the funds transferred. Again, however, the same result would obtain outside of bankruptcy, as *Slodov* makes clear; it simply reflects the application of well-accepted principles of trust law.

The minority position, on the other hand, would itself produce "absurd" results: it would define property rights differently for purposes of § 547(b) than for other purposes. Outside of bankruptcy, *Slodov* would permit the United States to assert a beneficial interest (under § 7501(a)) in specific funds only if the funds could be traced as withheld taxes. And even in bankruptcy, when the United States asserts a beneficial interest in funds still in the debtor's possession at the commencement of the case, the minority would contend that the claim could succeed only if the withheld taxes could be proven (albeit with the aid of "reasonable assumptions") to be still in the debtor's possession. See *Begier v. United States*, 878 F.2d at 766–767. Only in the preference context would the tracing requirement be abrogated completely.

In summary, I conclude that § 547(b) is clear and so cannot be construed as containing an implied exception in favor of the IRS except upon very clear evidence of contrary legislative intent. No such evidence has been produced. The evidence—the crucial sentence from the House Report, on which the minority relies so heavily—is itself ambiguous, thin, and at odds with the Bankruptcy Code's purpose of promoting equality of treatment among creditors. Moreover, the minority's implied exception is not needed to avoid absurd results; rather it would engender absurd results by defining property rights in trust fund taxes differently for purposes of § 547(b) than for all other purposes. Therefore, the cited sentence from the House Report should not be used to create an implied exception to § 547(b).

*Conclusion*

This Court concludes that, for purposes of § 547(b), the funds transferred can be deemed trust funds held for the benefit of

---

**8.** This interpretation is similar to the one arrived at by the court *In re Olympic Foundry Co.,*

63 B.R. 324, 327–328 (Bankr.W.D.Wash.1986).

the United States only if the funds can be traced as withheld taxes. There is no evidence that the Debtor ever actually withheld taxes for the benefit of the United States,[9] much less that the funds actually paid to the United States can be traced as the withheld taxes. Rather, the evidence shows that the payments were made with the Debtor's general revenues. Therefore, the transferred funds belonged to the Debtor; and because the transfers satisfied the other requirements of § 547(b)(1) through (5), the Trustee may avoid the transfers. Judgment should enter for the Trustee as a matter of law. A separate judgment shall enter accordingly.

## JUDGMENT

This case having come on for hearing before the Court on the plaintiff's motion for summary judgment and a decision having been duly rendered in his favor, it is therefore *ORDERED* and *ADJUDGED* that the plaintiff, Harry Graham, Trustee for Malmart Mortgage Co., Inc., recover of the defendant, the United States of America, the amount of $200,000.00, with interest thereon at the rate provided under 28 U.S.C. § 1961(c)(1).

---

9. For this reason, I need not decide whether the United States should have the benefit of "reasonable assumptions" to aid its tracing effort, and if so, what such assumptions would consist of. The Court has no evidence that the Debtor even withheld taxes to trace.